First case of the afternoon, call 2-10-0232, Ripley v. BDO Seidman, Robert Grisman, et al. On behalf of the Appalachians today, our jury, on behalf of the Appalachians, Mr. Carl T. Savage, on behalf of BDO Seidman. Will there be only one attorney for each side arguing, or will there be more than one? One. Your Honor, I may have less than one minute, because I will probably be doubting their oral argument, but in the spirit of the court, I will not doubt this time. All right, thank you. You may proceed. Thank you, Your Honor. Before we proceed, we filed a motion, it's a conditional motion, you know, a pardon, a supplement, an appellate record, pursuant to norm 3-9. I may respond, I know that is ruled on at this point. Staff will discuss that, or I'd like to mention some of the documents in that, in the follow-up. You could even take a look at the case, sir. Take a look at the case, sir. Just to expand the motion. All right. We'll take, at this point in time, we'll take the motion with the case, so you could proceed. Thank you, Your Honor. May I approach the end? Yes. Okay. These were exchanged with a respondent during the week. There are additional cases as well as a statute that I'll be referring to. May it please the court, counsel. I represent the Ripley's, who are the clients of BDO Seidman, who purchased a tax strategy years ago that has gone very bad. BDO filed a motion to compel arbitration in the trial court. The Ripley's moved to defend that in the state trial court based on three positions. One is that under New York law, when fraud permeates the entire consulting agreement, the arbitration provision is invalid. Two, under New York law, the arbitration provision is unconscionable due to substantive unconscionability and procedural unconscionability. And three, the claims don't fall within the scope of the arbitration provision. In the trial court, the court granted the motion to compel based on only one position, and that was they found that New York law applied, that it wasn't preempted, but fraud did not permeate the contract. They did not touch on or rule on the unconscionability argument, and they did not rule on the claims scope argument. And so it's our position that the trial court erred in three ways. One, that the trial court should have ruled that fraud permeated the entire contract because there was undisputed evidence, substantial, that under the law of New York, we met our burden. Second and third, deal with the fact that the court did not look at our other positions, which would have likewise invalid in the arbitration provision. The court correctly ruled that New York lied. So at this point in time, unconscionability will not be an issue, punitive damages will not be an issue? No, they are all issues because the court denied our position in the trial court, so those were all in play. All right. You said the trial court did not rule on unconscionability, and I know the trial court actually didn't specifically rule on that. But my understanding is under New York law, and correct me if I'm wrong, that there has to be both procedural and substantive unconscionability for unconscionability to apply. Procedural unconscionability doesn't lie if it's an arm's length transaction, and the trial court did in fact find that it was an arm's length transaction. So in essence, didn't the trial court rule that since it was an arm's length transaction, that if we take it to a philosophical conclusion under New York law, that it would not be unconscionable? Well, thank you, Judge. Our position is that under New York law, under the Broward case, that both procedural and substantive unconscionability don't need to be present. That substantive unconscionability alone will invalidate an arbitration provision. That's number one. Number two, there's two ways for unconscionability to manifest itself. One is, as you said, an arm's length transaction. And second of all, as in the Utica case I talked about, you can show that the arbitration provision was inserted into the consulting agreement in order to affect the fraud. And if that happens, then the provisions can be unconscionable. And so it's our position that even if the court was correct on the procedural part, that under the substantive part, there only has to be either procedural or substantive under New York law for an impossibility to be found. And the facts that have been not only asserted, but the evidence through the admissions of BDO Seidman, are that the arbitration provision was inserted into the consulting agreement to affect the fraud. Counsel, as a threshold matter, are the plaintiffs admitting that the consulting agreement was a result of arm's length negotiations? Has that been conceded? No, Your Honor. We don't concede that because if you look at the facts, there are so many things that BDO knew that they didn't tell us. And for example, in the lawsuit documents that we just asked the court to take judicial notice of, BDO Seidman filed a lawsuit against a law firm claiming that they gave them bad advice on this tax strategy internally. And in those documents, BDO has admitted that they were highly concerned of civil and criminal exposure, that they went to lawyers to see how they could protect themselves. And that the way they came up, the way they figured out how to protect themselves was to put an arbitration provision into the consulting agreement that would protect against their fears, and this is in their documents, of class actions, fraud, RICO claims, treble damages by clients like Mr. Ripley. So there are things like that that they did not tell Mr. Ripley when he was executing the consulting agreement that they had an obligation to tell him. So is it your position that fraud in the inducement is sufficient to bar arbitration? Under New York law, I believe that fraud in the inducement of a particular portion of a contract must go to the arbitrator. What about if it's just fraud in the inducement in general? Is that sufficient to bar arbitration? Does the case law hold that? The case law holds that fraudulent inducement of a contract, entire contract, would go to arbitration. But that's different in the Oberlander case that we've cited, as well as numerous other cases have said in New York there's an important distinction. There's fraudulent inducement and fraudulent permeation of the entire contract. And what we've alleged is fraudulent permeation of the entire contract. Our evidence goes to that. All of our allegations go to that. So in essence, we have not alleged fraudulent inducement. What's happened here is BDO has ignored the evidence. They've ignored the argument, and they've tried to mischaracterize and twist our allegation into a fraudulent inducement claim so that they can somehow then argue that we should go to arbitration. That is not our argument, nor is that what the evidence holds. We have alleged fraudulent permeation of the entire contract, which under New York law, the court decides whether or not the contract has been permeated by fraud. And if it does, the entire arbitration division falls with it. What's the enforcement of the agreement and essentially the element under New York law, the enforcement of the arbitration agreement? In other words, as I read the arbitration agreement, it mentions execution of the arbitration agreement, but fails to mention enforcement of the arbitration agreement. I understand that. Please slide, and we are close to that. Enforcement is a necessary element. And what's your response to that? My response is, and this is where I think the trial court went off the tracks. In New York, the highest court in New York is the Court of Appeals. There's two courts lower than that. They're the only courts that have ruled exactly on what's at issue in this case, and that is an explicit New York choice of law provision in a contract with no enforcement language. That's the Hackett case and the Downing Waterproofing case. In those two cases, the courts have made a distinction. If the arbitration provision has an explicit choice of law like our contract, then New York law applies. You don't need the enforcement language. But if you move outside that arbitration provision and you go to the general choice of law provision in the overall contract, that's where you must have the enforcement language. So the location of the choice of law is a very important distinction. Not only the highest court in New York is recognized, but in this case in particular it's important because BDO is trying to graft this general choice of law enforcement requirement onto the arbitration provision, which the New York courts don't require. Let's back up a second. I'm not sure I understood or agree with your citing of diamond waterproofing. Looking at it, it seems to quote, in the absence of the more critical language concerning enforcement, however, all controversies are subject for arbitration. That's the whole thing of diamond waterproofing. So if you don't have the enforcement language in there, diamond seems to hold that you have to contain both the statement New York law will govern the agreement and its enforcement. Diamond waterproofing specifically talks about that. That's correct. And in diamond waterproofing, the issue in that case was there was no choice of law provision in the arbitration contract. The choice of law was in the general contract's choice of law. And the court found because they didn't have the enforcement language in the general choice of law provision that the FAA applied and not New York law. That was the holding in that case. And if you note in diamond waterproofing, they cite to a case called Smith v. Luckey. And Smith v. Luckey is another high court case. And that case explains it explicitly what the law is. In that case, in Smith v. Luckey, again, a high court case, the law was diamond waterproofing. There was a general choice of law provision with the enforcement language. Arbitration provision, no enforcement language. And the court in that case held because there was enforcement language in the general choice of law that the New York law and FAA, New York law would apply and not the FAA. But I would hasten back to the Hackett case, Your Honor, and that is there are only two cases. Hackett is the only high court case that has looked at this exact issue where there's an arbitration provision within a contract. And that arbitration provision has an explicit choice of law and no enforcement language. And Hackett held that an explicit and unambiguous term must be given effect. Now, for a good summary of New York law, I would refer you to the 212 investment case. That's an intermediate case in New York. But the beauty of that case is it explains the rationale between the diamond waterproofing holding and the Hackett holding. And basically, 212 says there's two ways in New York for you to have New York law apply as opposed to the FAA. Distinction is important. Arbitration provision, you don't need enforcement language. If you're outside the arbitration provision in the general choice of law, you need the enforcement language. And 212 explains that very well how those cases all come together. Hackett predated diamond waterproofing, did it not? Yes. Now, remember, diamond waterproofing didn't look at the same arbitration provision that Hackett looked at or that's in our case. Diamond waterproofing looked at one where there's no explicit choice of law in the arbitration provision. But some New York cases since diamond waterproofing, not higher court cases but intermediate trial court cases, have looked at that and have applied diamond waterproofing to this exact situation. There's two cases. One is All Metro and one is Krantz. Yes, Your Honor. All Metro involved a situation where there was an arbitration provision in the choice of law. And All Metro followed diamond waterproofing. It did not cite to Hackett. It did not cite to 212. And diamond waterproofing, I mean, All Metro essentially got the two facturing patterns wrong. And All Metro is not a high court case. All Metro, I think, is an intermediate court case. I think All Metro may be the trial court case. Yeah. I mean, it may be persuasive to us. I mean, looking at how New York courts look at these New York cases. I mean, it's not authority, but we just have to look at it possibly being persuasive. Well, the answer to your question is they diamond waterproofed. I mean, the All Metro case didn't get it right. I mean, there's one high court case. They haven't cited to another high court case with this specific facts. And the holding in that case is clear that under this case New York law should apply. The other case, Krantz, was a Southern District of New York case, which is a district court trying to apply New York law for the same reasons. They cite to diamond waterproofing, but they ignore Hackett. They ignore 2.2 investment. And so I think you'll see that those two cases just didn't analyze it right. There's one high court case, Ronald Coy, and that's what I would ask the court to follow as the trial court did. If we were to follow the analysis in, let's say, the Andrew Mellon Metro case, and the FAA applies, then this case, because you attacked the contract as a whole, under the FAA goes to arbitration, correct? That. You agree with that? Under the fraud permeates. Yeah. But under the FAA, the inconsolability argument, the inconsolability position is still under New York law. Right. And I'm just talking about the fraud permeates and who's going to decide that. Under the FAA, that goes to the— If the FAA applied, then that would go. But that's one of the things I think the trial court had erred is we have three separate reasons why the arbitration is either invalid, unenforceable, or claims don't fall within the scope. So even if your honors were to rule against us on that matter, our inconsolability argument under New York law, given the undisputed facts and evidence, applying it to the law, the Ripley's should not have to go to arbitration. The unconsolability argument, I just want to get back to that. Again, would you agree or disagree with this statement that under New York law, if it is an arms-length transaction, then procedural unconsolability does not apply? Do you agree with that or not? If it is—yes, I agree with that. Procedural. Now, one of the attorneys for your client in the trial court said it was an arms-length transaction. I mean, it's in the record. So isn't that a judicial admission that it was an arms-length transaction? If that is what was said in the trial court, I will not dispute it. And I'm not—what my point is here today is even if procedural does not apply— Right. No, I just want to nail down procedural first. Then we can move on to subsequent. Yeah. So procedural, and I believe the question was, but insofar as the agreement is concerned, are you now arguing that it was not an arms-length transaction? The attorney said, your honor, I believe it was arms-length. We'll stand on that. Okay. So now you can move to subsequent. On subsequent unconscionability, you focus on the entire transaction. You focus on the entire contract to see if the terms of the arbitration provision are fair. And when you do that in this case, here's what you'll find. It's going to take me about 30 seconds to go through the undisputed facts, but I think they're important because they are— I've never had a case like this ever, where there are these facts. BEOC has pled guilty to conspiracy and fraud. They've admitted that the consulting agreement was fraudulent and false. They've admitted that the legal opinion they got us was bogus. They admitted that they knew the IRS was going to disallow this transaction and assess our clients with penalties. They admitted that the transaction documents that they did for us were false and fraudulent. Those are the guilty pleas. This new BEO lawsuit that would attach documents on the lawsuit they filed had the following admissions. That in early 1999 or late—early 1999, early 2000 timeframe, the people running the BEO section that sold these tax strategies were highly concerned about civil and criminal exposure. So BEO hires two law firms to do a risk assessment. They didn't like what they heard from that. So, as you'll see in our papers, there was a meeting between board of directors and partners of BEO and this law firm where there was a discussion about how can they protect themselves from these expected civil lawsuits that would involve class actions, RICO, and federal damages. It's in the documents. They came up with inserting the arbitration provision into the consulting agreement that would deny a discovery, would deny punitive damages, and would give us no right to appeal, to take us out of court. There's a document that we cite to that shows BEO put that arbitration provision into the consulting agreement because of their concerns. They not only did that, they started doing personal asset protection. They got a full indemnity agreement against BEO Siegman, and BEO said in these documents that if we didn't know about all these bad things that our directors and board of directors and our partners knew, we would have shut this section down. That all happened before they came to Mr. Ripley with this consulting agreement. Counsel, let me just ask you this. The consulting agreement, as I understand it, provides that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel. So, the agreement, there could be discovery if allowed by the arbitration panel, correct? There could be. Why is that not arguably a mutual benefit to both sides? Because if you look at the facts, it unreasonably favors BEO. We are filing a lawsuit against BEO. There's five co-conspirators. There's fraud claims. There are conspiracy claims. They have all the information. They, on the other hand, the only claim they could have against us is a breach of contract claim where it would be basically they need the consulting agreement and evidence not to pay. So, in light of all the circumstances, we should not, Mr. Ripley should not be put in the position to be at the mercy of an arbitrator to allow us to have discovery. If we don't get discovery, we don't establish, we can't establish any facts to prove the fraud and conspiracy claims, and they've been rewarded for doing exactly what they said they were going to do back in 2000. When this was entered into, and it was an arm's-length transaction apparently conceded by trial counsel, when this was negotiated, was there concerns of fraud on the part of your clients? Absolutely not. So why, when it was set up, was it something that operated against your clients in its inception? Because BEO was aware of the fraud and the conspiracy at the time they entered into the agreement with our clients. And, again, we know that. Why? Because there have been admissions in their guilty pleas. Mr. Griswold, who is a defendant in this case, has pled guilty to conspiracy to commit fraud and fraud. In addition, these documents that we provided to the court shows that there was a meeting with the BEO partners and lawyers to put the arbitration provision in here because of their concerns for this litigation. So that's how we know it. That's in the evidence somewhere? That is in the, BEO filed this lawsuit that we have asked for judicial notice about three weeks after we argued this motion at the trial court. The documents in that, in the lawsuit, the BEO file, completely contradicts what they said in the trial court they're saying here. We didn't learn about this until about a month and a half, two months ago, when we were doing some research. They didn't bring it up. We found it. So it says that in those documents. More importantly, under the Illinois Consumer Fraud Act, the punitive damages claim is per se unconscionable. The Illinois Consumer Fraud Act, which is cited under Torture Reel, which is a case cited by BEO, says that in the event that a plaintiff asserts a claim that the defendant violated the Illinois Consumer Fraud Act, any agreement that precludes punitive damages is per se unenforceable. So that's the reason why punitive damages, one of the reasons why punitive damages is unconscionable. But more importantly, again, when you look at the test, when you look at all the facts and what's reasonable and unreasonable, BEO would never have a claim against us, the Riddleys, for punitive damages. Does the arbitration provision mention punitive damages or the consulting agreement in any aspect mention punitive damages? The arbitration provision says no punitive damage is allowed. And so in terms of the unconscionability, the BEOC would never need punitive damages, all they have is a breach of contract claim. On the other hand, the plaintiffs who have asserted fraud, conspiracy, violations of the statute, they are entitled to punitive damages. So if you look at the test, whether the clause or whether the provision favors one side or the other, it's clearly in that situation. And again, going back to the documents that were actually in court today, judicial notice, in the loss of the BEO file about two months ago against the lawyers saying you should have found all this stuff out, they have admitted that they knew clients would eventually sue them for RICO fraud, treble damages, and punitive damages. So they inserted the arbitration provision into the consulting agreement to block people like the Ripley's from discovering first the facts, which are all in their favor, and second, if they're lucky to discover them, to get punitive damages at a point in time when BDO has admitted, Mr. Griswold, who's a defendant in the case, has admitted that he is guilty of fraud and conspiracy to commit fraud on these transactions. Thank you. Thank you. Thank you. Thank you. Would you please address the motion? Does this motion to supplement the record? I think first of all, I think the material that Mr. Griswold just handed up does not go with that motion. That's a different issue. He had some additional cases he wanted to cite, so he handed them up to you. The motion, we opposed the motion for two reasons. One, the material that is submitted to the court consists of two batches. One is material from BDO documents, meetings, showing that BDO had concerns about these transactions back in 2000. The complaint and the guilty pleas that are already in the record show that far from having concerns, people pled guilty about these transactions and so admitted to illegality, not necessarily as to Mr. Ripley's transaction, but as to what the court has to do. The court has said time and time again, you do not look to the merits of the underlying transaction. That is all that that material goes to. You have to look at how this arbitration provision works under the separability doctrine. The other piece of information that plaintiffs ask that the court look at is what Mr. Ripley has to say. He has to say that the court has to look at how BDO inserted the arbitration provision into the consulting agreements to effect a fraud. That admission does not exist. There is one seven-word phrase from an outside counsel to BDO where she says, I think it's the language, ADR language in the engagement agreements has helped. Period. Stop. There is no discussion of helped to commit a fraud. There is no discussion that it's helped because we can block discovery or punitive damages. There's no discussion that it's helped because we have an in with the triple A. It just says has helped. And I don't know where he gets the reference that this is supposedly admission that the arbitration provisions will put in there to further a fraud. It makes no sense. There were no litigations pending at the time. Worldward, it makes no sense because of the nature of this arbitration provision. The arbitration provision before the court is plain vanilla. It is three arbitrators, we pick one, they pick one, those two pick a third. It's the American Arbitration Association, one of the most widely respected arbitration associations in the country. The obligations are entirely mutual. In fact, the provision mandates that the prevailing party get its attorney's fees and costs. Now, what kind of a fraudulent arbitration provision is that? So I think him saying that any of this new material shows that the arbitration provision is fraudulent makes no sense. And, in fact, generally he's saying that this new material shows that it's unconscionable. And, again, that makes no sense because, first of all, he's conceding now that he can't show procedural unconscionability, which is not surprising because you have a sophisticated party. You've got the arbitration language is right there in the agreement. This court in 2008 dealt with Tortorello and with Williams, and you had arbitration language buried in fine print, and you had consumers who didn't understand arbitration. You don't have any of that here. You've got it right there in the agreement, and there's no allegation whatsoever that DDO made any misrepresentations. In fact, plaintiff conceded below that there was no discussion whatsoever about the arbitration agreement. So he can't show procedural unconscionability, and nothing in these materials can change that. What does New York law say on whether he needs to show both procedural and substantive, or do you just need to show both? New York law generally says you need to show both. There is a case that says that in the exceptional circumstance, if something is just over the top, then one can survive, that one can suffice. But here he hasn't shown either. Does that allow punitive damages or is there a specific provision in here that disallows punitive damages? I know your argument is going to be that that doesn't fit the bill, but isn't it a candid argument you made that it does? Well, Your Honor, a few things. First of all, punitive damage restrictions generally have been upheld by the courts, in particular by the courts in New York, which we control here. He's raised the argument today for the very first time that that would violate the Illinois Consumer Protection Act, that's not on the briefs to this Court, that wasn't raised below. I think under the Supreme Court rules, that's been waived. But in any event, in Tortorello, this Court said that under the Illinois Act, the Court has to decide that issue of whether punitive damages can be waived, but that the FAA has a different scheme. So here, since we contend the FAA applies, we think any such issue would be for the arbitrators. Even if there is a severance that would only go to that claim, we would argue not any of the other claims. So you're saying that they're not totally out on the punitive damage issue? I'm sorry, Your Honor? They're not totally out on the punitive damage issue if New York law applies on this case? That's correct. In New York, New York cases have said time and again that you're allowed to strike punitive damages. Leaving aside the waiver issue that's never been raised until about 10 minutes ago, New York courts have said that's okay. But in any event, Your Honor, as to both this restriction and the discovery restriction, which we don't think is a problem, but as to both, this Court can sever. And in Tortorello, this Court held exactly that. And there's a severance clause, which there is here, then the Court can sever. And he, in fact, the plaintiffs have argued in their papers that this Court should sever. So there's no dispute that the Court has that power. So we don't think there should be a severance, but if there is, you've knocked out the only two grounds that he has for objecting on substantive unconscionability grounds, and there's nothing left. All that is left is he doesn't want to be in arbitration, which this Court in the Williams case said is just not enough. This Court in the Williams said that you cannot merely say there's nothing inherently unconscionable in arbitration, which makes sense. The courts have said quite the opposite. The courts have said time and again that arbitration is a tradeoff. They get a lot of advantages. For example, discovery. The Supreme Court in Dilmer said, yes, you have less discovery than you otherwise would have, but the arbitration is not bound by the rules of evidence. You need less discovery. And, of course, it's a lot less expensive when you have less discovery. So he's got nothing. I respectfully submit on unconscionability, and in particular, all the new material he's put in front of you, everything he talked about today about BDO, knew these things were bad. The courts say you must look at the arbitration provision itself. And this came out just in June from the U.S. Supreme Court in the Rent-A-Center case. In Rent-A-Center, the court squarely held that to attack an agreement as unconscionable, you don't look at the overall agreement. You look at the arbitration provision itself. Here, he can show nothing unconscionable about this plain, vanilla, mutually enforceable arbitration agreement. To get back to a special issue, he was trying to distinguish the Diamond Waterproofing case with a case that he said was a later case that purported to synthesize the holdings. It's clear that Diamond Waterproofing held that for New York law to trump the FAA, the arbitration clause must contain the qualification New York law will govern the agreement and its enforcement. He began to make an argument, well, there's a difference between a general clause in the agreement and one tied into the arbitration clause. So what's your position with regard to his purported new development in the case law that distinguishes that? Your Honor, it's not a new development. It was a case that preceded Diamond Waterproofing. He just got that wrong. The 212 investment case came out before the court of appeals issued its opinion in Diamond Waterproofing. It discussed the intermediate appellate level opinion in Diamond Waterproofing. So the 212 investment case, which is unpublished from the trial court, simply has no presidential value after Diamond Waterproofing comes out. Diamond Waterproofing comes out after 212, makes clear that you need that enforcement language. And so Diamond Waterproofing is saying is the last authority on this issue, not the one he cited. That's correct. That's correct. The Hackett case, which was the court of appeals in 95, in that case, the party's arbitration agreement said that New York law would govern arbitration and the only grounds for vacating the arbitration award were those encompassed by CPLR 7509 and 7511. And the court applied those particular CPLR, which is New York State's procedural code, those standards to vacating the arbitration award. So it wasn't merely that the arbitration agreement there was governed by New York law. It was governed by New York law and these two specific provisions of New York's procedural code. That language is absecure. So you have that case, then you have the court of appeals in Diamond Waterproofing. Since Diamond Waterproofing, the parties have cited six cases that talk about the need to have the enforcement language. None of those cases cite Hackett. In the arbitration clause itself? In the arbitration clause or somewhere else. There have been six cases that talk about the importance of enforcement somewhere. Now, without enforcement somewhere, you don't, you apply the FAA. And that's not here anywhere. And that's not here anywhere. That's correct. That's correct. All six of those cases cited Diamond Waterproofing. None of those cases cited Hackett. None of those cases cited 212 investment. So he's just, respectfully, I think he's wrong if those cases have any applicability. Plus, he's admitted that at least two of those cases go against him. He said that all mental was wrong and misogyny should not be followed. He said that France improperly discussed Diamond Waterproofing. In a footnote in his opposition brief, he also said in another case, Nokia, N-O-K-I-A, that that case ignored language in the arbitration clause. So he's asked this court now to disagree with three separate New York courts interpreting a New York issue. And, you know, we think this court should not do so. And we think that Diamond Waterproofing is pretty clear. A couple of other points, unless you have questions on that issue. He talked about the permeant standard. You know, we don't think you get there because we think the FAA applies. We think you don't get there because even if the FAA applies, it's preempted. And we cited the Salvano case. And the Salvano case was, again, New York's highest court that said that even if the parties agreement contains a choice of law for a particular state, you don't apply that state's law if there's a conflict with the FAA. There could be no clearer conflict than that between New York's rule and PrimalPaint, you know, which for generations has said that the courts decide, the arbitrators decide questions of fraud, not the courts. And, again, that rule is just reaffirmed and re-sent here. But even if you find more preemption, then you get to the fraud permeates the agreement standard. There's been a concession that the agreement was negotiated at arm's length. So the only question left is whether the arbitration provision was inserted into the contract to further the fraud. And, you know, you circle back to where we started where you've got this plain, you know, arbitration provision. BDO has, you know, no guarantee or even a likelihood of any unfair advantage. And we've experienced these arbitrations. There's got to be three arbitrators. They have, you know, ultimate power to say, no, BDO, you lose. And there's no way that any of that furthers a fraud somehow. And he cited a couple of cases. He cited a case called Overlander. In Overlander, you had the party for an executive for one party was actually in cahoots with the executive for the other side, you know, which, of course, they haven't alleged here. And he cited another case, Kennelly. I think he just handed it up to you, Your Honors. In Kennelly, you actually had a party sitting down to sign contracts. And one side allegedly snuck in a whole bunch of other contracts into the pile of papers that were being signed. You know, of course, you don't have anything like that here. You have a sophisticated party, you know, freely entering into an arbitration agreement. You know, at bottom, what plaintiffs are complaining about here is that they don't want to arbitrate. And the courts say that's not enough. The courts say that arbitration is a preferred form for resolving disputes. It's streamlined. It's efficient. And, in fact, they filed their case 19 months ago, Your Honors. If they had just followed the contract that they signed, these sophisticated businessmen, they say they don't know about tax matters, but, you know, they had enough, you know, knowledge to enter into a contract where they were paying $900,000. If these sophisticated businessmen had just followed the contract, filed an arbitration demand, then we probably would have had a hearing by now. They would have had their arbitration award one way or the other. And so I don't know why they're complaining about this so bitterly. And so just I think for all those reasons, the Circuit Court should be affirmed. Thank you, Your Honors. Good afternoon, Your Honor. My name is Carl Foley. I represent the co-defendant and co-appellee Robert Greisman, and we hereby adopt the oral argument that Mr. Cary Sandwich just put forth on behalf of BDL Seidman. Thank you. Thank you, Your Honor. I was corrected on what took place in the trial court. The admission on the arm's length issue was made by Ms. Farquhar and Corwin with respect to one of the two tests where fraud permeates the entire contract. Under the Utica case, there's two ways that fraud can permeate, not an arm's length transaction or that the arbitration provision was inserted into the consulting agreement to affect the fraud. If you go to the Utica case, what we argued at the trial court was that we weren't arguing that there wasn't an arm's length transaction. We were arguing that the second problem, which is equally applicable, and that is if the fraud was inserted into the arbitration provision to affect the fraud. And if you look at Utica, you don't have to have evidence where they've admitted that we put the arbitration provision in to affect the fraud. What Utica teaches, which is a case they rely on and we cite, is that what you have to show is that the defendants knew of their fraudulent conduct at the time they had the taxpayer, Mr. Ripley, enter into the contract containing the arbitration provision. We have met that standard. It's undisputed what the evidence is. They've ignored the evidence. And so under Utica, we've met that test. So I'm sorry if I confused you earlier. When we had the discussion at the trial court level on the arm's length transaction, it was in response to which test under Utica are we going under. Second of all, Mr. Shanowitz keeps saying, well, if they would have just gone to arbitration, they would have been done with this. Well, first of all, clients don't want to go to arbitration. They feel like they've been duped. Second of all, as you'll see in the documents that we've asked you to take judicial notice of, the BDO lawsuit that they filed to against their lawyers had an arbitration provision in it. In that case, they apparently felt like it was better to go to trial in a courtroom than to arbitration. So I don't think that argument holds water. I want to quickly touch on some of the cases because the holdings are not quite as they have been said. If you look at the cases that BDO wants you to look at for the proposition that if the choice of law is in the arbitration provision, it has to have the enforcement language. Setting aside the Krantz and the All-Metro case, which we've talked about, every other one of those cases, you've got to look closely to catch this, is a situation where there was not an arbitration provision which had a choice of law at all, or there was an arbitration provision which the plaintiffs were trying to say the language created an explicit New York choice of law, or the third situation was it was a general choice of law in the contract that needed the enforcement language. Not a single case they cite or discuss, and I challenge you to look, talks about an arbitration provision with a specific New York choice of law except for All-Metro and Krantz. Now, with Diamond Waterproofing, in Diamond Waterproofing, the issue clearly was not whether an arbitration provision with an explicit choice of law is governed by a New York law or FAA. In Diamond Waterproofing, the issue was if you have a general choice of law in a contract, is that enough for you to have New York law apply to the arbitration provision or do you need the enforcement language? And so in terms of the applicability of Diamond Waterproofing in this case, I would say look at Hackett. That is the only case factually and legally on point. The court, I mean, Mr. Samuels brought up the Rent-A-Center case as if that was somehow on point to this discussion. Again, if you look at that case, in that case, it was not an arbitration provision with a New York choice of law. In that case, the FAA applied, was clear, and the question was, oh, the FAA, does fraud, inducement of a contract go to the arbitrator or to the court? It was not a situation, as we have here, and we cited our brief. Those ten cases where they seemed to claim that you need the enforcement language in the arbitration provision itself, and we've given a blurb on how those are distinctive. But it's very important under New York law to understand from the beginning of the analysis, where is the choice of law? Is it in the arbitration provision or is it in the general choice of law? And finally, the 212 investment case, which we cited, it's a lower court opinion or an intermediate court opinion. Okay. And the issue brought up by BDO was, well, they looked at the intermediate court down the waterproofing opinion instead of the high court. Fair enough. But if you go to the high court down the waterproofing opinion, same issues in the lower court, same holding. The issue in the upper court was, when you have a contract that has a choice of law in the general provision without the enforcement language, does the FAA or the New York law apply? Same result in the upper court as the lower court. So that whatever distinction they're trying to make really doesn't make a distinction. Thank you. Your time is up.